UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES R. RIGGS, JR, | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Civil No. 5-23-P-S |
| | ) | Crim. No. 99-79-P-S |
| D.B. DREW, WARDEN, | ) | |
| FCI RAYBROOK, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION**

James Riggs has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2241. Riggs relies on <u>Booker v. United States</u>, __ U.S. __, 125 S. Ct. 738 (Jan. 12, 2005) in his single § 2241 ground. The United States has filed a motion to dismiss arguing that the 28 U.S.C. § 2241 motion runs afoul of the 28 U.S.C. § 2255 statute of limitation, that the § 2241 petition is not properly brought in the District of Maine, and that the <u>Booker</u> decision is not retroactive to cases on collateral review.[1] I conclude that under First Circuit precedent this Court can (most likely) make the determination of whether or not Riggs's petition meets the criteria of the § 2255 ¶ 5 savings clause and I recommend that the Court grant the Government's motion to dismiss because Riggs cannot seek <u>Booker</u> relief by filing a § 2241 petition that attempts to invoke the § 2255 savings clause.[2]

---

[1] As a fourth basis for its motion to dismiss the Government argues that Riggs's <u>Apprendi</u> claim was already decided adversely to him on direct appeal and that fact bars his attempt to raise this <u>Booker</u> claim on collateral review.

[2] I do not address the statute of limitations argument advanced by the United States because I believe it is unnecessary in light of the fact that the petition can be dismissed on other grounds and the statute of limitation question is currently pending before the United States Supreme Court. As the lengthy discussion herein suggests, I am satisfied that with a case postured such as one, this court does have the

*Procedural Background*

On April 23, 2004, Riggs filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The United States moved to dismiss that motion. On July 12, 2004, Riggs sought to withdraw his § 2255 petition without prejudice. The United States, in its response to that motion, pointed out that a one-year limitation exists with respect to petitions for post-conviction relief under 28 U.S.C. § 2255 and explained that because a writ of certiorari was denied by the Supreme Court of the United States in January 2004, Riggs had until January 2005 to file another § 2255 petition. In a supplemental pleading dated July 22, 2004, Riggs invoked Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), one of Booker's precursors, and in a supplemental response the United States argued that the Blakely claim was procedurally defaulted and in any event, Blakely did not apply retroactively to cases on collateral challenge. In due course I issued a decision recommending that Riggs's motion to dismiss without prejudice be granted, but advising him of the one-year limitation for filing a § 2255 petition explaining that the United States has made it clear that it is not waiving its right to assert a statute of limitations defense. That recommended decision was affirmed.

On February 3, 2005, this pleading, entitled "Form for Use in Applications for Habeas Corpus Under 28 U.S.C. Section 2241" was filed in the District of Maine. It is captioned, "United States District Court for the Northern District of New York" and lists the respondent as D.B. Drew, Warden FCI Raybrook, and identified his place of confinement as FCI Raybrook.

---

authority to reach the underlying issue raised by this § 2241 petition even though the petition was not filed in the District of Riggs's confinement. To dismiss this § 2241 petition, suggesting that it could only be filed in the District of confinement, would be to invite a waste of judicial resources and an exercise in futility for the already overburdened Northern District of New York.

*Discussion*

First, given Riggs's decision to voluntarily dismiss his 28 U.S.C. § 2255 motion, it is clear to me that Riggs does not intend this present pleading as a traditional motion under § 2255. Accordingly, this is not a petition that requires consideration of re-characterizing the motion as one properly brought under § 2255 and proceeding with notification of recharacterization as required by Castro v. United States, 540 U.S. 375, 381-84 (2003).

*Venue for this 28 U.S.C. § 2241 Petition and the Viability of a § 2241 Booker Challenge*

In the order to answer directed to the United States I expressly asked for the answer to include a response to the characterization of this petition as one brought pursuant to the "savings clause" jurisprudence of § 2255/§ 2241. The United States' memorandum addressed this concern thusly:

> A second reason to dismiss this most recent pleading summarily is because it was filed in the wrong district court. In petitioning for relief, Riggs filed a printed form petition that invokes 28 U.S.C. § 2241 and is captioned in the United States District Court for the Northern District of New York. However, §2241 petitions should not be brought in the district where sentence was imposed. Instead, they are properly filed in the district of confinement. See Miller v. United States, 564 F.2d 103, 105 (1st Cir. 1977).

(Mot. Summ. Dismissal at 6.)

In Miller the First Circuit opined vis-à-vis a § 2241 petition raising challenges to the propriety of a federal conviction:

> Miller's habeas petition should have been treated as a motion to vacate, pursuant to § 2255. Moran v. Hogan, 494 F.2d 1220 (1st Cir. 1974). See United States v. Tindle, 173 U.S.App.D.C. 77, 522 F.2d 689 (1975). Pro se petitions should be read liberally. McNair v. McCune, 527 F.2d 874 (4th Cir. 1975). The district court, which was the sentencing court, would have had no jurisdiction over a true § 2241 motion by Miller.

3

> Section 2241 provides a remedy for a federal prisoner who contests the conditions of his confinement; that motion must ordinarily be filed and heard by the district court in whose jurisdiction the petitioner is confined. 28 U.S.C. § 2241(a); Ahrens v. Clark, 335 U.S. 188 (1948); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973). The sentencing court is the designated forum for challenges to the validity of a federal prisoner's conviction or sentence, which are motions authorized by 28 U.S.C. § 2255. United States v. DiRusso, 535 F.2d 673 (1st Cir. 1976). See generally, 2 C. Wright, Federal Practice and Procedure, ss 589-93 (1969). But, since § 2241 and § 2255 were designated to be coextensive in all but venue, Allison v. Blackledge, 431 U.S. 63, 75 n. 8 (1977); Hill v. United States, 368 U.S. 424, 427 (1961), this court is free to treat the lower court's disposition as if it were made under § 2255.

564 F.2d at 105; see also United States v. Palmer-Contreras, 187 F.3d 624, 1998 WL 1085786, *1 (1st Cir. 1998) (unpublished opinion) ("Finally, § 2241 is not available to appellant in this case because he is not contesting the conditions of his confinement. See Miller v. United States, 564 F.2d 103, 105 (1st Cir.1977)."). Castro now makes it clear that courts are not as free as Miller suggests to unilaterally recharacterize a prisoner's filings.

Since Miller and the post-Miller enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996, the First Circuit in United States v. Barrett undertook a thoroughgoing inquiry into the question of whether a prisoner seeking collateral relief from his conviction "may use § 2241 or § 1651 to bring a claim that would otherwise be barred under § 2255 and 28 U.S.C. § 2244." 178 F.3d 34, 38 (1st Cir.1999). The Panel concluded that "while there are very rare circumstances in which review may exist even if the requirements of § 2255 have not been met," Barrett's case "present[ed] none of those circumstances." Id.

Barrett had indicated that his motion/petition was brought pursuant to 28 U.S.C. § 1651, § 2241, § 2255, and Article I, section 9, clause 2 of the United States

4

Constitution. After concluding that as a § 2255 motion it was a "second and successive," and rejecting Barrett's argument that the AEDPA restrictions should not be applied retroactively, id. at 42-49, the Panel turned to Barrett's "argument that the savings clause of § 2255 permits him to proceed under § 2241 as a means of seeking relief," id. at 49.

The Panel discussed the nature of a claim that would qualify under § 2255's "inadequate or ineffective to test the legality of his detention" clause. The Panel explained:

> A petition under § 2255 cannot become "inadequate or ineffective," thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA "second or successive" requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture. See, e.g., In re Davenport, 147 F.3d 605, 608 (7th Cir.1998) ("Congress did not change [the 'inadequate or ineffective'] language when in the Antiterrorism Act it imposed limitations on the filing of successive 2255 motions. The retention of the old language opens the way to the argument that when the new limitations prevent the prisoner from obtaining relief under 2255, his remedy under that section is inadequate and he may turn to 2241. That can't be right; it would nullify the limitations."); Triestman v. United States, 124 F.3d 361, 376 (2d Cir.1997) ("If it were the case that any prisoner who is prevented from bringing a § 2255 petition could, without more, establish that § 2255 is 'inadequate or ineffective,' ... then Congress would have accomplished nothing at all in its attempts--through statutes like the AEDPA--to place limits on federal collateral review."); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997) (stating that inadequacy or ineffectiveness cannot be established "merely because th[e] petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255," because "[s]uch a holding would effectively eviscerate Congress's intent in amending § 2255"); In re Vial, 115 F.3d 1192, 1194 n. 5 (4th Cir.1997) (en banc) (stating that § 2255 is not inadequate or ineffective simply "because an individual is procedurally barred from filing a § 2255 motion").
> Such a reading of the savings clause would also recreate the serious structural problems that led Congress to enact § 2255 in the first place. See In re Hanserd, 123 F.3d 922, 925, 934 n. 19 (6th Cir.1997) ("If [petitioner] and similarly situated inmates proceed under habeas corpus [which must be brought in the district with jurisdiction over the custodian], ... courts located near large federal prisons will be inundated with such motions, and witnesses and court records will have to travel thousands of miles to the situs of these habeas hearings, which would be

5

> held before a judge unfamiliar with the case."); see also United States v. Hayman, 342 U.S. 205, 210-14 (discussing the "practical problems" that prompted the enactment of § 2255).

Id. at 50. After discussing the Seventh Circuit's In re Davenport, the Third Circuit's In re Dorsainvil, the Second Circuit's Triestman in more depth, the Barrett Panel agreed with their conclusion "that habeas corpus relief under § 2241 remains available for federal prisoners in limited circumstances." Id. at 52. "But," the Panel reflected that it need not "articulate those circumstances precisely" in Barrett's case leaving "that task for another day"; "Applying any of the appropriately narrow standards described above clearly demonstrates that petitioner is not entitled to § 2241 habeas relief in this case." Id.

A footnote imbedded in this discussion makes the following observation apropos § 2241 petitions and venue:

> Federal prisoners are permitted to use § 2241 to attack the execution, rather than the validity, of their sentences, and the "inadequate or ineffective" savings clause is not applicable to such attacks since they are outside the bounds of § 2255. See United States v. DiRusso, 535 F.2d 673, 674-76 (1st Cir.1976) ("Section 2255 ... does not grant jurisdiction over a post-conviction claim attacking the execution, rather than the imposition or illegality of the sentence.... The proper vehicle for attacking the execution of sentence ... is 28 U.S.C. § 2241."); see also, e.g., Corrao [v. United States], 152 F.3d [188,] 191 [2d Cir. 1998)]; Valona [v. United States], 138 F.3d [693,] 694-95 [(7th Cir. 1998)]. However, Barrett's challenge (despite his claim that he seeks remedies unavailable under § 2255) clearly involves validity. We also note that a § 2241 petition is properly brought in the district court with jurisdiction over the prisoner's custodian (unlike a § 2255 petition, which must be brought in the sentencing court). See [United States v.] DiRusso, 535 F.2d [673,] 675-76 [(1976)]; Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir.1996). We will assume arguendo that Barrett has brought his request for § 2241 relief in the right court (despite his assertion in his brief that he was in prison in Colorado when his petition was filed and now is "in Boston, Massachusetts on parole"). See In re Dorsainvil, 119 F.3d [245,] 252 [3d Cir. 1997)]; cf. Phillips v. Seiter, 173 F.3d 609, 610-11 (7th Cir.1999).

Id. at 50 n.10.

In Sustache-Rivera v. United States the First Circuit also discussed the savings clause and Barrett vis-à-vis an effort to get § 2241 relief in the same district of conviction. 221 F.3d 8, 15 -17 (1st Cir. 2000). Sustache-Rivera's requested collateral relief premised on Jones v. United States, 526 U.S. 227, 251-52 (1999), the case holding that the serious bodily injury requirement in 18 U.S.C. § 2119(2) is an element of a carjacking offense that must be submitted to the jury. The United States Supreme Court's Apprendi v. New Jersey, 530 U.S. 466 (2000), an opinion issued after oral argument on the appeal, the Panel noted gave "Sustache an argument that Jones, while decided as a matter of statutory interpretation, is presently viewed by a majority of the Supreme Court as a constitutionally compelled rule." Id. at 11. The Panel ultimately stated that whether the Jones claim was constitutional or statutory was not a question it needed to resolve and that it also did not need to resolve the meaning of the savings clause, id. at 17, because of a "related doctrine": "whether Sustache's petition is properly treated as falling under § 2255 or under § 2241, he must show cause and prejudice for his failure to have previously made the claim," id.

However, with respect to its savings clause discussion and the venue concern, the Panel reflected:

> One procedural issue is whether a petitioner can avoid the gatekeeping function of the courts of appeals by simply refiling a § 2241 petition in the custodial district court. See, e.g., Hernandez v. Campbell, 204 F.3d 861, 866 (9th Cir.2000) (remanding § 2241 petition where district court had dismissed petition without determining whether the petition fell under the savings clause); Hooker v. Sivley, 187 F.3d 680 (5th Cir.1999) (noting that the determination whether a petitioner "may proceed under § 2241 ... can only be made in the district where he is incarcerated"). Congress did not speak to this issue, and there is little caselaw on point. We avoid this procedural question because the case has

>come to us in the customary posture, and Sustache has asked us to decide
>whether the savings clause authorizes him to proceed.

Id. at 15-16 (emphasis added); see also id. at 16 n. 13 (discussing the "sparing standards" guiding application of the savings clause in In re Davenport, In re Dorsainvil, Triestman, and Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999) and Barrett).

"A second problem," the Panel observed, "concerns the meaning of the savings clause itself":

>The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute, a prisoner is not guilty within the new meaning attributed to the statute. See, e.g., [] Wofford, 177 F.3d at 1242-45; Davenport, 147 F.3d at 610-12; Triestman, 124 F.3d at 373-80; Dorsainvil, 119 F.3d at 248-52. The savings clause has to be resorted to for such a statutory claim because Congress restricted second or successive petitions to constitutional claims. If a Jones claim is purely statutory, then an argument under the savings clause may be warranted. If, post-Apprendi, the Jones claim is a constitutional claim, there is less reason to resort to the savings clause, as Congress permits new constitutional rule claims to be made on second or successive petitions provided that the Supreme Court has made the new rule retroactive (and the claim was not previously available). If the Supreme Court does not ever make the decision retroactive, the prisoner is no worse off than before. If the Supreme Court eventually makes the rule retroactive, the prisoner may at that time attempt a claim by second or successive § 2255 petition.

Id. at 16-17 (footnotes omitted).

While Barrett and Sustache-Rivera are a little elusive apropos the question, I conclude that this court, which without dispute has jurisdiction over any § 2255 motions brought by Riggs, can consider whether or not Riggs can evoke the § 2255 savings clause by filing a § 2241 motion; I believe the court need not dismiss or transfer this petition without making this determination on a theory that § 2241 relief, no matter what its contour, can only be sought in the district of Riggs's confinement. Certainly, by filing the

8

petition in the District of Maine Riggs, like Sustache-Rivera has, as good as, asked this court to decide whether the savings clause authorizes him to proceed.[3] Also, the United States has briefed the merits of Riggs's Booker claim and I would be surprised to hear the United States Attorney for the District of Maine argue that it is not a proper, if not the only proper, respondent to challenges to the validity of convictions and sentences obtained in this district by dint of its prosecutorial efforts.[4]

It is true that there are circuits in which any adjudication of § 2255 savings clause collateral challenges in the district courts of conviction is apparently considered improper. See, e.g., Christopher v. Miles, 342 F.3d 378, 381 (5th Cir. 2003) (convicted in District of Rhode Island, § 2241 adjudicated in the Western District of Texas); United States v. Prevatte, 300 F.3d 792, 798 -799 & n.2 (7th Cir. 2002); Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir.2000); see also In re Nwanze, 242 F.3d 521, 524-28 (3rd Cir. 2001) (discussing the complexities of the question of proper venue, stating that "it is doubtful that an inter-district transfer of a section 2241 petition may be made from the district of confinement to the district of sentencing to continue to be treated after transfer as a section 2241 petition," concluding that the court in district of confinement could transfer a § 2241 petition with a viable challenge to the conviction to the district of conviction as a writ of error coram nobis). This is not the uniform practice, however. See Alamin v. Gerlinski, 30 F.Supp.2d 464, 466 -68 (M.D. Pa. 1998) (transferring a § 2241 savings clause petition to the district of conviction); Alamin v. Gerlinski, 73

---

[3] There is no civil filing electronically on record in the Northern District of New York.
[4] This dynamic distinguishes a § 2255 savings clause § 2241 from the alien and prisoner conditions of confinement (or ad testificandum) analyzed in Vasquez, 233 F.3d at 690- 97.

9

F.Supp.2d 607, 610 -12 (W.D.N.C. 1999) (granting, in the district of conviction, § 2241 savings clause relief).[5]

As a practical matter, the purpose of § 2255's enactment was to enable habeas challenges to convictions to be brought in their district of conviction to alleviate habeas pressure on districts containing federal prisons, see Vasquez v. Reno, 233 F.3d 688, 694 (1st Cir. 2000); Barrett, 178 F.3d at 50, and this statutory fix was on its face a venue management effort and a recognition of the court of conviction's proper role.  Judging from my research into the numerous § 2241 petitions invoking the § 2255 savings clause, the burden on the districts of confinement of adjudicating these last-hope habeas petitions is not insubstantial.  For venue purposes it is logical to distinguish § 2241 petitions which attack the validity of the sentence or conviction from § 2241 petitions that challenge the execution of a sentence.  Looking at it from a logistical prospective, it is certainly more efficient to adjudicate § 2241 execution of sentence petitions in the district of confinement.  And, while districts housing federal prisoners seem to adjudicate § 2255 savings clause § 2241 petitions on a regular basis with local United States Attorney offices responding,[6] with respect to this genre of savings clause petitions it is the district

---

[5] And this is not the first time the question of a proper venue for a § 2241 has arisen in this court.  In United States v. Franco-Montoya, Crim No. 89-22-P-C, 2001 WL 649471, *1 -2 (D. Me. 2001) I addressed a § 2241 petition bringing an Apprendi claim.  That petition and motion originated in the United States District Court for the Southern District of Florida. That court ordered that in legal effect the pleading was a motion to vacate pursuant to 28 U.S.C. § 2255 and, because the motion attacked a conviction entered in the United States District Court for the District of Maine, venue was ordered transferred to this court.  Regarding the § 2241 venue concern I indicated in a footnote:
> I need not discuss venue problems associated with bringing a petition pursuant to § 2241 in a court other than in the district court with jurisdiction over the pris oner's custodian.  See United States v. Barrett, 178 F.3d at 50 n. 10 (1st Cir.1999). For an interesting discussion of the problems that can occur when courts in two different circuits characterize a petition differently for purposes of § 2241/ § 2255 analysis see In re Austen O. Nwanze, 242 F.3d 521 (3d Cir.2001).

Id. at 2 n.1.

[6] Christopher concerned a conviction in the District of Rhode Island.  The docket of that § 2241 petition in the Western District of Texas, Civ. No. 01-763, indicates that an Assistant United States

of conviction that will have the easiest and speediest access to the criminal record and the sentencing judge,[7] the local United States Attorney and Pretrial Services offices, and the defense attorney that will have the historical familiarity with the case. See Barrett, 178 F.3d at 50. Another concern in pegging venue for validity of conviction/sentence § 2241 petitions to the place of confinement is that defendants convicted by the same court for the same conduct could (albeit in a limited – but, if the defendants satisfy the § 2255 savings clause inquiry,  pressing-- universe of cases) have the ultimate merits of their conviction determined by (potentially different) courts (inferior to the United States Supreme Court) outside the circuit of conviction.  These determinations could be based on legal precedents apropos which there are circuit splits and vis-à-vis which the circuit of conviction takes a position diametrically opposed to the courts in the districts that the co-defendants happens to be in custody at the time that the § 2241 petition is adjudicated. See In re Nwanze, 242 F.3d at 524 (noting the district of confinement Magistrate Judge's observation that Nwanze was tried, convicted and sentenced within the Fourth Circuit and was seeking the benefit of the Third Circuit's Dorsainvil decision).[8]  There is also a

---

Attorney responded to the petition.  It also shows that, six months after the government's response was filed, the court had to enter an order requiring the United States to provide the court with a copy of Christopher's criminal trial record from the District of Rhode Island. (Docket No. 7.) Managing a petition challenging the validity of a conviction in the district of confinement makes little practical sense when the court needs such detailed access to the record of underlying proceedings.  However, in those cases where the district of confinement is satisfied that summary dismissal of the § 2241/§ 2255 petition is warranted, it may make perfect sense to say that the district of confinement has "jurisdiction" over the petition.

[7]     The First Circuit Court of Appeals has stated that the sentencing court is free to rely on its first-hand knowledge of the criminal proceedings in reviewing collateral challenges.  See United States v. McGill, 11 F.3d 223, 225 (1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."),

[8]     This raises the specter, depending on what parameters the district/circuit of conviction places on the § 2255 savings clause, that a defendant convicted under one district/circuit court holding could obtain § 2241 relief in his district of confinement because he happens to be sent to a prison facility where there is a contradictory interpretation of, say, the conduct reached by the statute under which he was convicted. For example, prior to the United States Supreme Court's Ashcroft v. Free Speech Coalition, 535 U.S. 234, 243-44 (2002), the Fifth, United States v. Fox 248 F.3d 394 (5th Cir. 2001), Fourth, United States v. Mento, 231 F.3d 912 (4th Cir. 2000), Eleventh, United States v. Acheson, 195 F.3d 645 (11th Cir. 1999), and First,

11

risk that convictions obtained against co-defendants at the same trial for substantially the same criminal act could have dramatically different habeas experiences and outcomes just because they are sent to different federal facilities.[9]

---

United States v. Hilton, 167 F.3d 61(1st Cir. 1999) Circuits were at odds with the Ninth Circuit, Free Speech Coalition v. Reno, 193 F.3d 1083 (9th Cir. 1999) on the conduct reached by 18 U.S.C. § 2256(8)(B) and (D).

[9] Comparing the experiences of Prevatte and his co-defendant illustrates this point. In a 1992 criminal proceeding in the Northern District of Indiana Prevatte was convicted of detonating a pipe bomb in a residential alley that punctured a gas meter causing an explosion, shrapnel from which killed an abutting resident. The grand jury charged Prevatte (and co-defendants, including Robert Soy) with; "1. Conspiracy to maliciously damage or destroy property by means of an explosive under 18 U.S.C. § 844(i); 2.Maliciously damaging or destroying property by means of an explosive under 18 U.S.C. § 844(i). (Five counts); 3. Possession of a firearm in violation of 26 U.S.C. §§ 5845(f), 5861(c) and 18 U.S.C. § 2. (Ten counts); 4. Making a firearm in violation of 26 U.S.C. §§ 5845(f), 5861(f) and 18 U.S.C. § 2. (Five counts)." United States v. Prevatte, 16 F.3d 767, 772 (7th Cir. 1994). Two semi-successful appeals followed.  See id.; United States v. Prevatte, 66 F.3d 840 (7th Cir. 1995). On April 21, 1997, Prevatte filed a 28 U.S.C. § 2255 motion, Civ. No. 97-249, after his re-sentencing in 1996 following his second direct appeal. That motion was denied on September 25, 1997.

Prevatte filed his § 2241 petition in the Central District of California on November 23, 1999. After the district court dismissed the § 2241 petition for want of subject matter jurisdiction (conceiving of the claims as only being tenable as § 2255 claims), the Ninth Circuit, in view of Hernandez , 204 F.3d at 865, concluded in a September 21, 2001,opinion that it did not have jurisdiction over Prevatte's § 2241 petition challenging his Indiana conviction because Prevatte had been transferred from a federal facility in California to a federal facility in Colorado.  See Prevatte v. Adams , Civ. No. 99-12107, 2001 WL 1116900, *1 (9th Cir. 2001).

The decision that turned out to be key to Prevatte's argument, Jones v. United States, 529 U.S. 848 (2000), which ironically arose from the Northern District of Indiana also, was decided on May 22, 2000. After being rebuffed by the Ninth Circuit, Prevatte filed a motion with the Seventh Circuit asking it to recall the mandate in his criminal case. The Seventh Circuit determined that this motion ought to be construed as a petition under § 2241. 300 F.3d at 794.  The Panel concluded, in this August 8, 2002 opinion, that "Prevatte has brought a non-frivolous challenge to his conviction by alleging that, due to an intervening decision of the Supreme Court of the United States that narrows significantly the statute under which he was convicted, he stands convicted of having committed an act that Congress did not intend to criminalize" and that a court with jurisdiction over the § 2241 petition would determine that there was no procedural impediment to considering the petition on the merits"  300 F.3d at 802, the case was transferred to the District of Colorado and opened on its docket, Civ. No. 02-1562, on August 13, 2002. On October 14, 2002, the court entered an order to show cause why the petition should not be granted. The United States apparently responded with an argument that the case should be dismissed for want of jurisdiction. (See Docket Nos. 11 & 16.) On June 23, 2004, Prevatte moved for an order to obtain his trial records and the respondents filed the trial record from the Northern District of Indiana on October 27, 2004. There has been no docket activity since November 26, 2004. So, it has been five years since Prevatte filed his initial § 2241 petition.

Meanwhile, Prevatte's co-defendant, Robert Soy, did not file a § 2255 petition in the Northern District of Indiana after his 1996 resentencing until December 27, 2000, Civ. No. 00-624. The Court granted the motion as to one count and vacated that verdict on Jones ground, according to The United States' response to Soy's motion for a certificate of appealability, and denied it in all other respects. (Docket No. 61.)  The motion for appealability was denied in a six-page order. (Docket No. 76.) However on March 29, 2004, the Seventh Circuit Court of Appeals granted Soy's application for a certificate of appealability stating: "The substantial constitutional issue is whether Soy's conviction on count one for conspiracy violates Jones v. United States, 529 U.S. 848 (2000)." (Docket No. 83.)

So while the question of the proper venue for the full adjudication of § 2241 petitions brought under the § 2255 savings clause remains unanswered in the First Circuit, I do conclude that it is at least appropriate for this Court to review the petition that Riggs has filed here to determine if the claim is one that qualifies under the § 2255 ¶ 5 exception. And, based on the cautious acknowledgment by Barrett and Sustache-Rivera of the ability to seek § 2241 relief through the § 2255 savings clause, it is clear that Riggs's Booker claim is not a claim that satisfies the § 2255 ¶ 5 savings clause criteria. Riggs's Booker claim is outside the bounds of the "typical" § 2255 ¶5/ § 2241 case in at least two respects: (1) it is a first petition, not a second and successive petition, (albeit outside the one year limitations period and arguably procedurally barred); and (2) the Booker challenge does not involve a subsequent statutory interpretation rendering the defendant's conduct no longer criminal under the federal statute.

There is no dispute in this district that § 2255 Booker relief is not available to cases that have finished or forgone the direct appeals process. See Violette v. United States, __ F. Supp. 2d. __, __, 2005 WL 824156, *3 (D. Me. Apr. 8, 2005) (Singal, C.J.); May v. United States, __ F. Supp. 2d __, __, 2005 WL 839101, *1 (D. Me. Apr. 8, 2005) (Hornby, J.); Gerrish v. United States, 353 F. Supp. 2d 95 (D. Me. 2005) (same); Suveges v. United States, Civ. No. 05-18-P-C, 2005 WL 226221, *1 (D.Me. Jan 28, 2005) (Kravchuk, Mag. J.) affirmed Order Adopting Report and Recommended Decision, Feb. 21, 2005 (Docket No. 5) (Carter, J.); Quirion v. United States, Civ. No. 05-06-B-W,

---

It appears, then, that while the District of Colorado (and perhaps eventually the Tenth Circuit Court of Appeals) will be deciding Prevatte's collateral Jones challenge to his convictions, the Seventh Circuit Court of Appeals will decide his co-defendant's collateral Jones challenge. This outcome is quite different than the Tenth Circuit deciding whether Prevatte's sentence is being executed in a manner that comports with the United States Constitution and the Seventh Circuit deciding whether that sentence was valid in the first place.

13

2005 WL 83832, 3 (D.Me. Jan. 14, 2005) (Kravchuk, Mag. J.) affirmed Civ. No. 05-06 – B-W, 2005 WL 226223 (D. Me. Feb. 1, 2005) (Woodcock, J.). The First Circuit now has precedent that supports this non-retroactivity determination apropos Booker claims. United States v. Fraser, __ F.3d __, __, 2005 WL 1090138, *2 (1st Cir. May, 10, 2005)("This court has held that petitions under 28 U.S.C. § 2255 are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive," citing Cirilo-Muñoz); Cirilo-Muñoz v. United States, __ F.3d __, __, 2005 WL 858324, *5-6 (1st Cir. Apr. 15, 2005) (recognizing a consensus that Booker is not retroactive to cases no longer in the direct appeal pipeline). And, to date, at least four Circuit Courts of Appeal have considered and answered the question in published opinions and the four are unanimous in concluding that Booker does not apply retroactively to cases so postured. See Guzman v. United States, __ F.3d __, 2005 WL 803214 (2d Cir. Apr. 8, 2005); Varela v. United States, 400 F.3d 864 (11th Cir. 2005); Humphress v. United States, 398 F.3d 855, 860-63 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005); see also United States v. Leonard, 2005 WL 139183, at *2 (10th Cir. Jan.24, 2005) (unpublished opinion on motion to review sentence).

        While Sustache-Rivera never answered whether an Apprendi challenge, for which no § 2255 relief was possible, could be brought in a § 2241 petition, several Courts of Appeal rebuffed such Apprendi/§ 2255 savings clause/§ 2241 initiatives. See, e.g., Love v. Menifee, 333 F.3d 69, 73-74 (2d Cir. 2003); Bannerman v. Snyder, 325 F.3d 722, 723-24 (6th Cir.2003); Wesson v. U.S. Penitentiary Beaumont, TX, 305 F.3d 343, 346-47 (5th Cir.2002); Okereke v. United States, 307 F.3d 117, 120 (3d Cir.); see also United

States v. Franco-Montoya, Crim No. 89-22-P-C, 2001 WL 649471, *2  (D. Me. 2001) ("[Franco-Montoya] does not get by the hurdle of § 2255 until and unless the United States Supreme Court makes the Apprendi rule retroactive to cases on collateral review. Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir.2000). It was for that very reason that the First Circuit denied Franco leave to file a second or successive petition under 28 U.S.C. § 2255. ... He cannot now attempt an 'end run' by styling his petition as brought pursuant to § 2241.").  Several district courts have likewise concluded that Booker § 2241 claims do not come under the § 2255 savings clause.  See, e.g. Dubose v. Jeter, Civ. No. 05-17, 2005 WL 955003, 1 -2 (N.D.Tex. 2005); Francois v. Rivera, Civ. No. 05-26, 2005 WL 927408, *1 (N.D. Fla. 2005); Tineo v. Le Blanc, Civ. No. 05-318, 2005 WL 740520, *1 -3  (D. Minn. 2005).  I am satisfied that Riggs is not entitled to proceed with his § 2241 petition as his Booker claim does not meet the "sparing standards" of the § 2255 ¶ 5 savings clause.[10]

---

[10]  Unlike Sustache-Rivera, Riggs has not yet spent his first § 2255 currency, although he does appear to have let the § 2255 ¶ 6(1) time run.  Riggs may still have in the bank a first-time § 2255 motion that is timely under § 2255 ¶6(3), and the timing questions of a Booker challenge so postured may be answered by the Supreme Court's decision which is pending in its review of Dodd v. United States, 365 F.3d 1273 (11th Cir. 2004).  In that case the Court granted cert on the question:
> Does the one-year period of limitation in paragraph 6(3) begin to run on the date that this Court initially recognizes the right asserted, regardless of whether the right has been newly recognized or made retroactively applicable to cases on collateral review, or does it begin to run on the date on that a prisoner can show that all three of its prerequisites have been established; that is, that the right asserted "was initially recognized" by this Court, "has been newly recognized" by this Court, and "made retroactively applicable to cases on collateral review?"

(Pet'r Br., 2005 WL 353696 at *I; see also United States Br., 2005 WL 122089 at *I.) Given the lively discussion of the operation of this subsection during the March 22, 2005, oral argument, the transcript of which is available at 2005 WL 75741, the Court may well decide that the ¶ 6(3) year runs from the date that the Supreme Court, and not any lower court, makes the case retroactive to cases on direct appeal so that the ¶ 6(3) provision, although worded differently, has the same prerequisite to ¶ 2255 relief as does ¶ 8(2) apropos second or successive motions.

Riggs, by withdrawing his § 2255 motion last year and not refiling it within the ¶ 6(1) year, may think he is keeping such a challenge available to him in a safe deposit box.  Of course the wisdom of such a strategy will depend on the outcome of Dodd.  As to whether this court will treat the ultimate judgment in this § 2241 savings clause petition as an adjudication of a first § 2255 motion, I intimate no opinion except to say that there is a potential that the United States will argue that the court should do so in any subsequent

*Conclusion*

For the above reasons I recommend that the Court **GRANT** the Government's motion to dismiss and **DISMISS** Riggs's 28 U.S.C. § 2241 petition because his Booker claim cannot be brought in a § 2241 petition.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 11, 2005.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

---

§ 2255 proceeding. This is exactly why Justice Scalia pointed out in Castro that even the court's well meaning recharacterization of petitions could be hazardous to petitioners in this complex area of the law. Castro, 540 U.S. at 387-88 (Scalia, J., concurring in part and concurring in judgment) ("[E]ven fully informed district courts that try their best not to harm pro se litigants by recharacterizing may nonetheless end up doing so because they cannot predict and protect against every possible adverse effect that may flow from recharacterization. But if district courts are unable to provide this sort of protection, they should not recharacterize into first § 2255 motions at all.").